In accordance with the directive of the North Carolina Supreme Court, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. At such time, an employee-employer relationship existed between plaintiff and defendant-employer.
3. At all relevant times, Travelers Insurance Company was the compensation carrier on the risk.
4. Plaintiffs average weekly wage was $264.18, yielding a compensation rate of $176.13 per week.
5. Plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer on April 30, 1991.
 * * * * * * * * * * *
Pursuant to the directive of the Supreme Court, and based upon the competent evidence of record, the Full Commission makes the following findings of fact:
 FINDINGS OF FACT
1. At the time of the hearing in this matter before the Deputy Commissioner, plaintiff was a 57 year old female high school graduate with no other formal education, training, skills or licenses.
2. Plaintiffs employment history consists mainly of work as an assembler on an assembly line and as a waitress.
3. Plaintiff received a compensable injury to her lower back on April 30, 1991 while lifting a waffle iron at work. Plaintiff received medical treatment from Carolina Urgent Care Center in Rocky Mount on May 1, 1991. Plaintiff was diagnosed with a strain and was prescribed anti-inflammatory, pain medications and physical therapy. Plaintiff was eventually referred to Dr. Robert Appert of Wilson, North Carolina. Dr. Appert examined plaintiff on May 24, 1991, and then released her to return to work the following day.
4. On April 30, 1991, plaintiff had a history of left leg venous stasis ulcers and phlebitis. Plaintiff had a history of a pre-existing right wrist injury from a fall resulting in limited loss of use of the right arm. Notwithstanding these pre-existing conditions, plaintiff had worked all of her adult life.
5. A Form 21 Agreement accepting compensability for plaintiffs April 30, 1991 injury by accident was approved by the Industrial Commission June 19, 1991. With the exception of a brief attempt to return to work as a part-time cashier/hostess, plaintiff has received temporary total disability benefits since her initial injury.
6. Plaintiff returned to work on August 28, 1991, but reinjured her back in April of 1992 while lifting a tray. Plaintiff was examined by Dr. Appert, who reported that she probably aggravated her pre-existing problem.
7. After continued pain for one month, plaintiff was examined by Dr. Bloem, who had treated her for a prior hand injury at work. Physical therapy was prescribed again.
8. As a result of her injury, plaintiff has been seen and treated by an urgent care facility, Drs. Garry S. McKain, Rosario Guarino, Lukas Martinez, William R. Deans, David Tomaszek, Lee A. Whitehurst and T. Craig Derian, for treatment of chronic low back and leg pain. During various periods of time, the Industrial Commission and carrier assigned rehabilitation nurses to coordinate plaintiffs medical treatment.
9. Plaintiff received chiropractic treatments beginning March 9, 1992, and Dr. McKain took the plaintiff out of work on April 10, 1992.
10. On June 22, 1992, Dr. Guarino reported that plaintiffs complaints of pain were mainly in her right buttock and low back, but with plaintiffs MRI showing some disc bulging at L4-L5 on the left. Plaintiff was prescribed rest, heat and pain medications. Plaintiff remained out of work.
11. On November 6, 1992, plaintiff began complaining of problems with neck pain, anxiety, irritability and depression. Dr. Guarino referred her to a psychiatrist, Dr. Cunningham. Dr. Guarino also noted that neurologically there was no permanent disability noted on her workup and that her problems were musculoskeletal and perhaps psychiatric.
12. Plaintiff was referred to Dr. Cramer and then to Dr. Whitehurst who presented options of work hardening or surgery. Plaintiff declined surgery and attended a back building program for nine days before reinjuring her back.
13. During the period of time following plaintiffs injury, she suffered from substantial weight gain and depression.
14. The medical and chiropractic care plaintiff received from doctors identified above was reasonably required to effect a cure, give relief or lessen her resulting disability from the April 30, 1991 injury. As a result of the April 30, 1991 injury, plaintiff may reasonably require future medical and chiropractic care in order to effect a cure, give relief or lessen her disability.
15. Plaintiff was examined and treated by Dr. T. Craig Derian, an orthopedic surgeon, in Durham, North Carolina. Although some of her visits were coordinated by an Industrial Commission rehabilitation nurse, plaintiff saw Dr. Derian at her own expense.
16. During the period of time from April 12, 1993 through April 20, 1993, plaintiff attempted to return to work as a part-time cashier/hostess at the Holiday Inn in Rocky Mount, North Carolina.
17. As a result of this attempt to return to work, plaintiffs back and leg pain increased and her pre-existing left leg venous stasis ulcer condition was materially aggravated to a disabling degree, requiring medical care, diagnostic studies and surgery by Drs. George Paschall, III, Glenn Davis, and David Edrington.
18. The medical care plaintiff received from Drs. Paschall, Davis and Edrington was reasonably required to effect a cure, give relief or lessen her disability from the material aggravation of plaintiffs pre-existing left venous stasis ulcer condition as a result of her weight gain, inactivity, deconditioning and attempt to return to work in a modified job procured by defendants.
19. Two vocational consultants, Jane Palmer and George Page, have been employed by defendants and assigned to plaintiff since her compensable injury. Jane Palmer with American Rehabilitation, Inc., procured the modified part-time cashier/hostess position plaintiff unsuccessfully attempted to perform.
20. George Page was employed by the defendant-carrier on April 22, 1994, and since that time, the only possible job identified was a part-time telephone marketing job. The position was not suitable because of the commuting distance, the limited ability of plaintiff to sit and stand, and the side effects of prescription medicine. This job was never offered to plaintiff.
21. Since April 30, 1991, plaintiff has suffered from chronic back and leg pain including periods of remission and exacerbation which are beyond her control. Plaintiff is unable to sit or stand for any significant period of time and must lie down during the day to relieve her pain. Plaintiffs compensable injury will likely require future medical care and may require spinal fusion surgery.
22. As a result of her compensable injury and aggravation of pre-existing conditions, plaintiff has been incapable of earning wages with defendant-employer or in any other employment since April 10, 1992 with the exception of the approximately 28 hours which plaintiff worked in April of 1993 as a hostess/cashier.
23. Plaintiff reached maximum medical improvement of her back on September 13, 1993.
24. No credible evidence was presented to show that there are any actual jobs in the economy which plaintiff could successfully perform considering her age, education, work experience, transferable skills and current physical limitations.
 * * * * * * * * * * *
Based upon the directives from the Supreme Court and the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On or about April 30, 1991, plaintiff sustained a specific traumatic incident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. 97-2(6).
2. As a result of her April 30, 1991 injury by accident, plaintiff was temporarily totally disabled from April 10, 1992 until September 13, 1993, with the exception of approximately 28 hours of activity performed in an unsuccessful attempt to return to work, and is entitled to compensation at the rate of $176.13 per week for the aforementioned period. N.C. Gen. Stat. 97-29.
3. As a proximate result of her April 30, 1991 injury by accident, plaintiff is permanently and totally disabled from competitive employment with defendant-employer or in any other employment which would be suitable by reason of her age, work experience, training, education and other factors affecting her ability to earn wages and is entitled to receive compensation at the rate of $176.13 per week beginning September 14, 1993 and continuing for the remainder of her lifetime or until further Order of the Commission. N.C. Gen. Stat. 97-29.
4. The medical and chiropractic care plaintiff received from Drs. Garry S. McKain, Rosario Guarino, Lukas Martinez, Willam R. Deans, David Tomaszek, Lee A. Whitehurst, and T. Craig Derian, among others, was reasonably required to effect a cure, give relief or lessen plaintiffs disability from the April 30, 1991 incident. As a result of the April 30, 1991 incident, plaintiff may reasonably require future medical care and treatment in order to effect a cure, give relief or lessen her disability. N.C. Gen. Stat. 97-25.
5. The medical care and treatment plaintiff received from Drs. Paschall, Davis and Edrington as a result of aggravation of her previous venous stasis ulcer condition was reasonably required to effect a cure, give relief or lessen her disability as a proximate cause of the April 30, 1991 injury. As a result of the April 30, 1991 incident, plaintiff may reasonably require future medical care and treatment of her venous stasis ulcer in order to effect a cure, give relief or lessen her disability. N.C. Gen. Stat. 97-25.
 * * * * * * * * * * *
In accordance with the directives of the Supreme Court and based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant-employer shall pay plaintiff, as a result of her temporary total disability, compensation at the rate of $176.13 per week, for the period April 10, 1992, through September 13, 1993, subject to a credit for amounts which have been previously paid and for any earnings of the plaintiff in her unsuccessful attempt to return to work in April of 1993.
2. Defendant-employer shall pay plaintiff, as a result of her permanent and total disability, compensation at the rate of $176.13 per week, beginning September 14, 1993 and continuing for the remainder of her lifetime or until further Order of the Industrial Commission, subject to a credit for amounts which have previously been paid.
3. Amounts of compensation which have accrued, minus the credit, shall be paid to plaintiff in a lump sum, subject to a reasonable attorneys fee approved in Paragraph 4 of this AWARD.
4. A reasonable attorneys fee in the amount of thirty-three and one-third percent of the compensation benefits due under Paragraphs 1 and 2 of this AWARD is approved. Of the accrued amount, if any, paid in a lump sum to plaintiff, defendants shall deduct thirty-three and one-third percent and forward that amount directly to counsel for the plaintiff. For the balance of the attorneys fee, defendants shall forward every third compensation check directly to plaintiffs counsel.
5. Defendants shall pay all medical compensation incurred, or to be incurred, as a result of plaintiffs injury by accident of April 30, 1991, and aggravation of her venous stasis ulcer in April 1993. The approved medical treatment includes that rendered by Dr. T. Craig Derian.
6. Defendants shall pay the costs, including interest according to N.C. Gen. Stat. 97-86.2 on any unpaid compensation from October 11, 1994, the date of the initial hearing in this matter.
This the ___ day of April, 2000.
 S/ ______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ______________________ THOMAS J. BOLCH COMMISSIONER
LKM/jth